# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY A. CHIMENTI, | ) | CASE NO. 5:16-cv-2276 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| COMMUNITY SUPPORT SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

This is an employment case removed from state court. Plaintiff Kimberly Chimenti ("plaintiff" or "Chimenti") alleges that defendant Community Support Services, Inc. ("defendant" or "CSS") improperly terminated her employment. Before the Court is defendant's motion for judgment on the pleadings. (Doc. No. 7 ["MJP"].) Plaintiff opposes the motion (Doc. No. 9 ["Opp'n"]), and defendant has filed a reply (Doc. No. 10 ["Reply"]). Because the Court finds that plaintiff's state law claims are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), defendant's motion is granted, and this case is dismissed.

## I. BACKGROUND

For over ten years and through May 16, 2016, plaintiff was employed by defendant, a non-profit organization, as a case manager. (Doc. No. 1-1 Complaint ["Compl."]) ¶¶ 2-3.) Her employment with defendant was governed by the terms a collective bargaining agreement ("CBA"), which was negotiated by the Service Employee's International Union ("SEIU" or "the Union"). (*Id*. ¶¶ 4-5.) A copy of the relevant CBA is appended to the complaint as Exhibit A. (*Id*.

¶ 4; Doc. No. 1-1 [CBA], beginning at 12[1].)

In early May 2016, a mentally ill client of CSS reported that plaintiff had improperly withheld a portion of the client's medication. (Compl. ¶ 6.) On May 16, 2016, plaintiff met with Douglas Wagner, a CSS human resources representative. (*Id.* ¶ 7.) Plaintiff attended the meeting with Wagner without an SEIU representative present on her behalf. (*Id.* ¶ 9.) Wagner advised plaintiff that CSS was "investigating 'whether or not [Chimenti] had committed an undocumented medication error' in violation of company policy." (*Id.* ¶ 10.) At the conclusion of the meeting, Wagner sent plaintiff home, and did not permit her to engage in the investigation in any "meaningful way[.]" (*Id.* ¶¶ 11-12.)

Plaintiff was not permitted to return to work after the meeting with Wagner. (*Id.* ¶ 13.) Instead, on or about May 30, 2016, plaintiff was contacted by a CSS representative and was "notified that her employment was terminated, effective immediately." (*Id.* ¶ 14.) Plaintiff was not "subject to progressive disciplinary proceedings of any kind before her dismissal[,]" and was not permitted to redeem her accumulated "sick days" or "vacation time" for value. (*Id.* ¶¶ 15, 17-18.)

On August 10, 2016, plaintiff filed the present action in state court. Her complaint raises three breach of contract claims and a claim for wrongful discharge. On September 13, 2016, defendant removed the action to federal court. In its notice of removal, defendant maintains that plaintiff's claims "arise under the laws of the United States and, further, are preempted by Section 301 of the LMRA," giving this Court "original jurisdiction over this action pursuant to 28 U.S.C. § 1331." (Doc. No. 1 (Notice of Removal ["Notice"]) ¶ 10.)

---

[1] All page number are to the page identification number generated by the Court's electronic docketing system.

## II. STANDARD OF REVIEW

Defendant brings its dispositive motion under Rule 12(c) of the Federal Rules of Civil Procedure. The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as for a motion to dismiss under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co*., 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd*., 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the non-moving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff*, 133 F.3d at 421 (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc*., 32 F. Supp. 3d 869, 874-75 (W.D. Mich. 2014) ("court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint[]") (quotation marks and citations omitted); *see also Williams v. CitiMortgage, Inc*., 498 F. App'x 532, 536 (6th Cir. 2012) ("if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document[]") (quotation marks and citation omitted).

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of

the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570 (citation omitted).

In deciding a motion to dismiss and/or a motion for judgment on the pleadings under Rule 12, the Court generally may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment under Rule 56. As the Sixth Circuit has held, however, there are a number of exceptions to this rule. Indeed, it is well settled that, in ruling on a Rule 12 dispositive motion, a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see also Commercial Money Ctr., Inc. v. Illinois Union Ins. Co*., 508 F.3d 327, 335 (6th Cir. 2007) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss) (citations omitted).

Here, the CBA is appended to and referenced repeatedly in the complaint and is central to each and every one of plaintiff's claims. Accordingly, the Court may take judicial notice of the CBA without converting the Rule 12(c) motion into one for summary judgment. *Commercial Money Ctr.*, 508 F.3d at 335-36.

## III. DISCUSSION

Defendant maintains that all of plaintiff's state law claims are preempted by federal labor law. "Given the importance of maintaining uniform federal law, the Supreme Court 'has made clear that § 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement.'" *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004) (quoting *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc)). "Preemption under § 301 applies not only to state-law contract claims, but has been expanded to include state-law tort claims as well." *Id.* (citation omitted). Tort claims must be independent of the CBA to survive § 301 preemption. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985) (analyzing state-law claim to determine if it was "independent of any right established by contract," or, instead, "whether evaluation of the tort claim [was] inextricably intertwined with consideration of the terms of the labor contract[]").

Based upon Supreme Court preemption law, the Sixth Circuit has developed a two-step approach for determining whether § 301 preemption applies. *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004) (citing *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994)).

> First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

*DeCoe*, 32 F.3d at 216 (internal citation omitted). That is, a state-law claim is preempted by § 301 either (1) if "resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement[]" or (2) if "the rights claimed by the plaintiff were created by the collective bargaining agreement [rather than] by state law." *Mattis*, 355 F.3d at 906 (citing *DeCoe*, 32 F.3d at 216). "[I]f a state-law claim fails *either* of these two requirements, it is preempted by § 301." *Id.* (emphasis in original).

With respect to the former inquiry, courts must ask whether a plaintiff can prove the elements of her state-law claim without contract interpretation. *See DeCoe*, 32 F.3d at 216. "In order to make [this] determination, the court is not bound by the 'well-pleaded complaint' rule, but rather, looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *Id.* (citing *Terwilliger v. Greyhound Lines, Inc*., 882 F.2d 1033, 1037 (6th Cir. 1989)). "If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement." *Id*.

### A.     Plaintiff's Breach of Contract Claims

In Ohio, a breach of contract claim requires the plaintiff to establish: "(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff." *MMK Grp., LLC v. SheShells Co., LLC*, 591 F. Supp. 2d 944, 963 (N.D. Ohio 2008) (citing *Thomas v. Publishers Clearing House*, 29 F. App'x 319, 322 (6th Cir. 2002)).

In Count One, plaintiff alleges that she entered into an employment contract with CSS: namely, the CBA. (Compl. ¶ 20, citing Ex. A.) Quoting from the CBA, she avers that CSS "had a duty to impose progressive discipline upon [Chimenti] for her alleged violations of company

policy[]" and that CSS breached that "contractual duty and obligation to [Chimenti] by failing to impose [p]rogressive [d]iscipline[.]" (*Id*. ¶¶ 21-23, quoting Ex. A § 13.2.) She further claims that she was damaged as a result of CSS's breach. (*Id*. ¶¶ 24-25.) In similar fashion, Count Two alleges that CSS breached plaintiff's right guaranteed by the CBA "to the presence of a delegate during an investigatory and/or disciplinary meeting" when she was not permitted a SEIU representative during her meeting with Wagner, and that she suffered damages as result. (*Id*. ¶¶ 27-33, quoting Ex. A § 13.5.) Finally, in Count Three, plaintiff alleges that CSS breached its duty, under the CBA, to permit plaintiff or her union representative "to provide information or evidence in support of her position with respect to the Employer's investigation[.]" (*Id*. ¶ 39; *see id*. ¶ 36, quoting Ex. A § 13.7.) Once again, plaintiff claims she was damaged by defendant's alleged breach of the CBA. (*Id*. ¶¶ 40-41.)

These contract claims do not even represent a close call. A plain reading of plaintiff's allegations makes clear that the only contract at issue (and from which plaintiff quotes liberally) is the CBA. *See, e.g., Main v. Rio Tinto Alcan Inc*., No. 4:12CV-00110, 2016 WL 698163, at *7 (W.D. Ky. Feb. 19, 2016) ("It is clear that this breach of contract claim is a claim for breach of the collective bargaining agreement . . . and, therefore, is completely preempted by § 301[.]") Under the first step of the Sixth Circuit's analysis, there can be no question that resolving plaintiff's contract claims would require the Court to interpret the provisions of the CBA to determine the contractual rights owed to plaintiff and whether CSS's conduct constituted a breach of those terms. *See Robinson v. V&S Detroit Galvanizing, LLC*, 195 F. Supp. 3d 916, 922 (E.D. Mich. 2016) (claim seeking accrued vacation time, sick time, and/or disability pay was preempted because resolving plaintiff's claim "would require [the court] to interpret the terms of the CBA

because whether [p]laintiff is entitled to such benefits depends upon the terms of the CBA."). Having failed this prong of the test, these claims are subject to dismissal. However, plaintiff's claims would also fail under the second prong because each of plaintiff's contract claims requires her to prove the breach of a right specifically created by (and exclusively existing under) the CBA. *Id*. at 923 ("It is undisputed that the fringe benefits that [p]laintiff is seeking to recover were created by the CBA, thus [this state-law wage claim] is preempted by § 301.")

Plaintiff concedes, as she must, that plaintiff's employment was governed by the CBA, and that she is alleging that CSS violated the CBA. (Opp'n at 75.) She claims, however, that, following her termination, "she was no longer represented by her Union and was no longer subject to the protections created by the Collective Bargaining Agreement." (*Id*.) As defendant notes, plaintiff cannot have it both ways. It is clear from her own complaint allegations that her contract claims rest exclusively on alleged violations of the CBA, and are, therefore, preempted.[2]

## B. Plaintiff's Wrongful Discharge Claim

Plaintiff's fourth and final claim purports to set forth a cause of action for wrongful discharge under Ohio law. In support of this claim, plaintiff alleges that CCS "had a duty to dismiss [Chimenti] for cause, only." (Compl. ¶ 43.) "In Ohio, an employment relationship which has no fixed duration is considered at-will, meaning either party can terminate the relationship at any time, without cause." *Southward v. FedEx Freight, Inc*., 98 F. Supp. 3d 926, 931 (S.D. Ohio

---

[2] Equally specious is plaintiff's argument that preemption is not warranted because "the matter does not require substantial interpretation of the agreement itself, rather it requires an analysis of the terms and conditions of the [p]laintiff's dismissal, only." (Opp'n at 75.) The relevant inquiry does not ask what percentage of the CBA must be consulted before the claims are preempted by § 301. Instead, the Court must ask whether the proof of the elements of the state claims requires interpretation of the CBA and/or whether the rights alleged to have been breached are derived therefrom. *DeCoe*, 32 F.3d at 216. As set forth above, both questions must be resolved in favor of federal preemption.

2014) (quotation marks and citation omitted). Nonetheless, a discharged employee can advance a state-law wrongful discharge claim if she can establish that she was discharged "for a reason that contravenes clear public policy." *Burgett v. BFI Waste Sys. of N. Am., Inc.*, 328 F. Supp. 2d 769, 771 (N.D. Ohio 2004) (citing *Greeley v. Miami Valley Maint. Contractors, Inc.*, 551 N.E.2d 98, syllabus ¶ 3 (Ohio 1990)).

To prevail on such a claim, a plaintiff must prove the following elements: (1) the existence of a clear public policy derived from constitutional, statutory, regulatory, or common law; (2) dismissal under circumstances that would jeopardize that policy; (3) plaintiff's dismissal was motivated by conduct related to that public policy; and (4) the employer lacked an overriding legitimate business reason for the dismissal. *Donovan v. XPO Logistics Freight, Inc.*, No. 4:16CV1910, 2017 WL 3116723, at *5 (N.D. Ohio July 21, 2017) (citing *Painter v. Graley*, 639 N.E.2d 51, 57 n.8 (Ohio 1994); *Piona v. United Parcel Serv., Inc.*, 558 F.3d 478, 481 (6th Cir. 2009); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 311 (6th Cir. 200)); *see Burgett*, 328 F. Supp. 2d at 772 (similar) (quoting *Kulch v. Structural Fibers, Inc.*, 677 N.E.2d 308, 321 (Ohio 1997)).

Plaintiff does not specifically identify the source of the duty to discharge only for cause, but the only possible source that can be gleaned from the complaint is the CBA, which was incorporated by reference. (Compl. ¶¶ 5, 42.) The CBA provides that CSS has "the right to discharge, suspend, or discipline an employee only for just cause." (Ex. A § 13.1.) While plaintiff has attempted to recast this particular claim in terms of Ohio tort law, it is clear that she

is really alleging that CSS wrongfully discharged her in violation of the CBA.[3] *See Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 519 (6th Cir. 2012) (stating that the court must "look beyond the face of plaintiff's allegations and the labels used to describe her claims and . . . evaluate the *substance* of plaintiff's claims" (emphasis in original)); *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 801 (6th Cir. 1990) ("Here, preemption of the plaintiff's negligence claim is inevitable because the underlying duty arises directly from the CBA.") As with any state-law contract claim where the breached right derives from the terms of the CBA, plaintiff's wrongful discharge claim is preempted by § 301 of the LMRA.[4] *See Cotter v. DaimlerChrysler Corp.*, 87 F. Supp. 2d 746, 752 (E.D. Mich. 2000) (wrongful discharge based on violation of the collective bargaining agreement was preempted by § 301; *DiPuccio v. United Parcel Serv.*, 890 F. Supp. 688, 690 (N.D. Ohio 1995) (similar); *see also Lueck*, 471 U.S. at 211 (parties may not "evade the requirements of § 301 by relabeling their contract claims as

---

[3] Moreover, because the right to discharge only for cause flows from the CBA, it cannot be said that this tort claim is "independent" of the CBA. *See Saunders v. Ford Motor Co.*, No. 3:14-CV-00594-JHM, 2015 WL 300523, at *7 (W.D. Ky. Jan. 22, 2015) ("All of the rights [p]laintiff alleges were violated are created by the CBA, and thus are not founded independently in state tort law.") (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 399, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)); *see generally Lueck*, 471 U.S. at 213.

[4] Even without federal preemption, plaintiff's wrongful discharge claim would fail as a matter of law. In *Klepsky v. United Parcel Serv., Inc.*, the Sixth Circuit recognized that, under Ohio law, an employee cannot maintain a common law wrongful discharge claim if she was subject to the terms of a collective bargaining agreement. *Klepsky*, 489 F.3d 264, 270-71 (6th Cir. 2007) (citing *Haynes v. Zoological Soc'y of Cincinnati*, 652 N.E.2d 948 (Ohio 1995) (quotation marks omitted)). The court in *Klepsky* explained that, because the claim of wrongful discharge in violation of public policy represents an exception to the employment-at-will doctrine, the Ohio Supreme Court has held that an "'employee must have been an employee at will'" in order to bring such a claim. *Id.* (quoting *Haynes*, 652 N.E.2d at 951). Because plaintiff's complaint makes it abundantly clear that her employment with CSS was subject to the terms of a collective bargaining agreement, her wrongful discharge claim would have been subject to dismissal on the pleadings for this additional reason. *See, e.g., Main*, 2016 WL 698163, at *9 (relying on *Klepsky* and similar Kentucky law finding plaintiff's wrongful discharge claim barred by the existence of a collective bargaining agreement); *Lemaster v. Anchor Hocking LLC*, No. 2:11-CV-549, 2012 WL 3224094, at *2 (S.D. Ohio Aug. 5, 2012) (noting that "the Sixth Circuit . . . has consistently relied upon *Haynes* to dismiss public policy wrongful discharge claims brought by former union members, such as Lemaster") (citing, among authority, *Klepsky*, 489 F.3d at 271). However, because the parties did not brief this issue, the Court limits its dismissal of this claim to preemption grounds.

claims for tortious breach of contract[]"); *see, e.g., Swift v. Ford Motor Co.*, 637 F. Supp. 125, 126 (E.D. Mich. 1986) ("'Although he had not mentioned LMRA § 301 in the complaint, and stylized his causes of action in common law terms, . . . [i]t is apparent from the allegations in his complaint . . . that [plaintiff] was alleging that [defendant employer] wrongfully discharged him in breach of the collective bargaining agreement'") (quoting *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980) (alterations in original; further citations omitted)).

## IV. CONCLUSION

Because all of plaintiff's claims are preempted by federal law, defendant's motion for judgment on the pleadings (Doc. No. 7) is granted, and this case is dismissed.

**IT IS SO ORDERED**.

Dated: August 4, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**